20585. MECHANICS LOAN & SAVINGS CO. *v.* HOLLIDAY.

DECIDED JULY 15, 1930.

*Burress & Dillard,* for plaintiff in error.

*J. H. Kennedy, Harwell, Fairman & Barrett,* contra.

LUKE, J. Caroline Holliday brought an action against Mechanics Loan & Savings Company in the municipal court of Atlanta to recover $255 deposited in the savings department of that company on April 20, 1926. A jury found a verdict for the plaintiff for $255, with interest thereon at six per cent. per annum from the date of the deposit, and a judgment was entered accordingly. The appellate division of the municipal court affirmed the judgment, the case was taken to the superior court by certiorari, and the judge of the superior court overruled the certiorari. The exception here is to the judgment overruling the certiorari.

In its answer, the defendant denied the material allegations of the petition, and pleaded substantially as follows: 3. "On April 20, 1926, plaintiff, through her agent, H. M. Mooty, deposited with defendant $255. . ." 4. "When said money was deposited, said Mooty informed defendant that plaintiff was an illiterate colored person, and that he would handle all transactions between plaintiff and defendant for plaintiff, as plaintiff was unable to sign checks and handle the matter herself." 5. Said Mooty signed a "customer's card," reciting that amounts left on deposit for 30 days or more would earn six per cent. interest, that no interest would be allowed on amounts withdrawn within 30 days, that any deposit could be withdrawn upon 30 days' advance notice, and not otherwise, and that the depositor would comply with the above rules. 6. On January 1, 1927, defendant mailed plaintiff a check for $10.67 for interest on said deposit, and on January 21, 1927, her agent, H. M. Mooty, returned the check for deposit in a savings account to the credit of plaintiff. 7. In November, 1927, plaintiff, through her said agent, Mooty, advised defendant that she had lost her pass-book, and wanted a duplicate issued. Said Mooty then had plaintiff sign a certificate that she had lost her pass-book, and also a receipt for the duplicate, and defendant then issued a duplicate pass-book to plaintiff. 8. "On November 12, 1927, plaintiff, through said Mooty, her agent, presented said duplicate pass-book," and defendant issued a check, payable to plaintiff, for $125, and entered a debit for said amount on said pass-book. 9, 10.

In the same manner, plaintiff drew out $100 on December 1, 1927, and $40.67 on December 10, 1927, said sums constituting plaintiff's entire deposit in said bank. 11. "Defendant further shows that all its transactions with plaintiff, both depositing of said money and the withdrawal of it, has been through plaintiff's agent, Mooty, and the account was handled in the manner agreed on when the deposit was made; that if plaintiff desired it to be handled in any other manner. . , she did not notify defendant about it."

Caroline Holliday testified that she gave H. M. Mooty $155 to deposit with defendant, but that she never authorized him to handle her business generally for her; that the only authority she gave Mooty was to deposit the money and bring the pass-book to her; that after Mooty had brought her the pass-book he came to get it, but she could not find it; that she never signed any affidavit that her pass-book was lost or gave any receipt for the new pass-book; that she could read printing, but could not write; that she never received or signed any check for interest, never indorsed or signed by mark or otherwise any check, never requested or authorized Mooty to draw out any of her money, never received money from any check, and never got any of the money deposited; that she never knew that her money had been drawn out of the bank until she found her pass-book and went to get her money; and that the reason she did not ask Mooty to get her money was because "the book says to always bring the book when you come after it" and she "was doing what the book said."

H. M. Mooty testified that he had been knowing both the plaintiff and her husband for a long time and had transacted considerable business for both of them; that she came to him and told him that she was uneasy about some money she had in a bank in Marietta and wanted to put it elsewhere; that he suggested the defendant as a safe depository; that the plaintiff could not read or write; that he deposited the money and delivered the pass-book to her; that he told her how he would handle the money, and signed a card stating how it should be handled; that she told him to put the money represented by the interest check in the bank and he did so; that she wanted $125, but told him that she had lost her pass-book; that he was a notary public; that at Mr. Moor's suggestion he wrote the affidavit that the pass-book was lost, read it to the plaintiff, had her make her mark to it, signed it as a notary, and went back

and got the money on the check; that the plaintiff signed also a receipt for the duplicate pass-book by touching a pen; that each check mentioned in the answer was drawn at the special instance and request of the plaintiff; that he took each check to her and she made her mark on it and he witnessed the mark; that he gave to her the proceeds of every check drawn; that he never drew out any of her money without her request, and that he gave her every cent so drawn out.

Mr. T. E. Busbin, who worked for the defendant, testified that the plaintiff came to the bank and demanded her money, and he told her it had all been drawn out and her account closed, but that he did not tell her to whom he had paid it, for the reason that she did not ask.

Mr. N. A. Moore, president of the bank, testified that Mr. Mooty came to the bank, told him that plaintiff had some money she wanted to deposit, and that he advised Mooty "to put it in her name by you," and that he did so. This witness testified also that Mooty returned the said interest check for deposit; that when Mooty told him that the pass-book was lost he told Mooty what steps to take to get a duplicate; that the checks were issued as stated by Mooty; that he thought each check was mailed to Mooty, but was not sure about that. The witness further swore: "I did not ever make any investigation, any inquiries at all, as to whether this man had authority to do what he did. . . I did not ever write any letter or make any inquiry at all to this woman to see what authority this man Mooty had."

All the checks, the bank-book, the receipt, the certificate, and the card were admitted in evidence. Each check was payable to Caroline Holliday, signed "Caroline Holliday, by her mark," and the mark was witnessed by "H. M. Mooty, notary public." The other papers mentioned were signed in the same manner.

If the testimony of the plaintiff is true, Mooty's authority was strictly limited to depositing the money and bringing to her the pass-book, and she never signed any check, certificate, or receipt, never authorized Mooty to draw out any of her money, and never received one cent of the money deposited. If Mooty's testimony is true, each check was drawn at the special instance and request of the plaintiff and signed by her, and she received every cent of the money deposited. It takes no citation of authority to show that the

fact that Mooty was authorized to deposit the money and get the pass-book would not of itself give him authority to draw out any money for Caroline. The court submitted the issues fully and fairly to the jury, and the jury resolved the irreconcilable conflict in the testimony of the plaintiff and Mooty in favor of the former. In these circumstances it is beyond the power of this court to interfere with the verdict, and, in so far as the evidence is concerned, it must stand.

The court permitted the plaintiff to testify as follows: "I told him to deposit the money in the bank. I did not instruct him or give him authority to handle my business generally. I did not instruct him or give him authority to draw money out, or to attend to my business in any other way. The only instructions were to deposit the money in the bank and bring me the bank-book." The objection interposed to this testimony was that the defendant "was not bound by private instructions of the principal, the plaintiff, to her agent." Since one of the main issues in the case was whether or not Mooty had authority to draw out the money, the evidence was properly admitted.

It is next contended that the court erred in ruling out the answer to the following question: "Mr. Mooty, do you know anything about her leaving some money on her dresser, and some one stealing it, and about plaintiff asking you to help her in the matter?" The witness answered: "Yes, sir, she had a negro woman and daughter living in the same house with her, and she came running up there one day and said they had stole her money, and wanted me to put her in jail." It is contended that this evidence was erroneously ruled out, first, because, "along with the other evidence introduced, this evidence tended to establish the fact that said Mooty handled plaintiff's business generally," and, second, because it impeached the testimony of the plaintiff. We do not think that the evidence ruled out tended in any way to show that Mooty had any right to draw out the money in question, or tended to illustrate any issue in the case. The court properly held that it was irrelevant. Furthermore, since the testimony of the plaintiff was in direct and irreconcilable conflict with that of Mooty as to every material issue in the case about which there was any controversy, we fail to see how the rejected testimony would have added to or detracted from the veracity of the plaintiff, or how the defendant was injured by its

rejection. We are satisfied that this ground discloses no valid reason for granting a new trial.

The next contention is that the plaintiff "could not ratify that part of Mooty's contract to deposit said money . . , and repudiate that part of the contract . . to act for her in withdrawing it." In the first place, this ground assumes that Mooty was a general agent having plenary authority to handle the money deposited, though the jury said this was not true; and, in the next place, this exception is merely an elaboration of the contention that the evidence does not support the verdict.

The defendant next sets out a resumé of a large part of the evidence adduced upon the trial, and insists that the "verdict was contrary to the great weight or preponderance of the evidence." We have already held that the evidence supports the verdict, and, if we were correct in that conclusion, there is no merit in this contention.

Our conclusion is that the trial judge did not err in overruling the certiorari, and so hold.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*